889 P.2d 1227

**In the Matter of Jake R. EVANS, an Attorney Disbarred from the Practice of Law before the Courts of the State of New Mexico.**

**No. 22206.**

Supreme Court of New Mexico.

Feb. 10, 1995.

David A. Baca, Deputy Disciplinary Counsel, Albuquerque, for Disciplinary Bd.

Carmen E. Garza, Las Cruces, for respondent.

## OPINION

PER CURIAM.

This matter came before the Court following two separate disciplinary proceedings conducted pursuant to the Rules Governing Discipline, SCRA 1986, 17–101 to –316 (Repl. Pamp.1991 & Cum.Supp.1994), in which respondent Jake R. Evans was found to have committed various violations of the Rules of Professional Conduct, SCRA 1986, 16–101 to –805 (Repl.Pamp.1991 & Cum.Supp.1994). Pursuant to Rule 17–316(D) we adopt the disciplinary board's findings of fact, conclusions of law, and recommendation to disbar respondent from the practice of law pursuant to Rule 17–206(A)(1). In addition, certain conditions are imposed that must be satisfied before consideration of a petition for reinstatement.

Between 1989 and 1992, Evans represented Consuelo Coyazo regarding various legal matters. The representation included assisting Coyazo in obtaining $100,000 in life insurance proceeds on her deceased husband's policy; Coyazo was the named beneficiary on the policy. During his representation of Coyazo, Evans entered into business transactions with her consisting of three separate $20,000 loans by Coyazo to Evans between January 1990 and March 1992.

Evans prepared and delivered to Coyazo a promissory note and mortgage to secure $40,000 of the loan. The collateral listed was Evans' residence on Hillrise Drive in Las Cruces, New Mexico. Evans represented to Coyazo that the Hillrise property was free and clear of prior liens, when in fact it had a prior mortgage. Evans also prepared and delivered to Coyazo a promissory note and mortgage to secure $20,000 of the loan. The collateral listed was 4.99 acres of real estate identified as the Fairacres property, which Evans represented was free and clear of prior liens, when in fact it also had a prior mortgage.

In the course of engaging in these business transactions with his client, Evans failed to advise Coyazo to seek independent legal advice, made no effort to obtain independent legal advice for her, and failed to advise her fully on the reasonable and appropriate protection that could be afforded by private mortgage financing. Evans also failed to advise Coyazo of the need to promptly record each mortgage and made no effort to record the mortgages for her. In fact, Evans wrongfully instructed Coyazo to file the mortgages upon his death.

On the advice of others, Coyazo finally recorded her mortgages on March 15, 1993. By the time the mortgages were recorded, a *lis pendens* on Evans' Hillrise residence had been filed with respect to foreclosure proceedings by the First National Bank of Dona Ana County. Since Coyazo was not named in the foreclosure proceedings, her post-*lis pendens* lien effectively was foreclosed. With regard to the Fairacres property, on February 12, 1993, by a deed dated May 15, 1987, Evans conveyed the 4.99 acres in Fairacres to a third party. A title search on the two properties confirmed that prior to the recording of Coyazo's mortgages, Evans' Hillrise residence as well as the Fairacres property were encumbered with two recorded transcripts of judgment and two recorded federal tax liens, in addition to the recorded first mortgage liens, all of which were superior to any lien of Coyazo.

Rule 16–108(A) governs business transactions with or adverse to a client and provides as follows:

A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to

the client in a manner which can be reasonably understood by the client;

(2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

(3) the client consents in writing thereto.

Evans' business transactions with Coyazo failed to comply with the provisions of Rule 16–108(A). The terms and conditions of the loans were not fair and reasonable; the terms and conditions were not fully disclosed to the client in writing; Evans' client was not given a reasonable opportunity to seek independent counsel; and, she did not consent to the transactions in writing.

Evans' failure to comply with the requirements of Rule 16–108(A) were further aggravated by the fact that he knowingly deceived Coyazo by failing to properly advise her of the need to record her mortgages or by failing to record the mortgages for her, and by misrepresenting that there were no prior mortgages. The disciplinary board also found that Evans knowingly deceived Coyazo or acted with a dishonest or selfish motive in transferring the 4.99 acres in Fairacres to a third party without indicating that the property was subject to Coyazo's mortgage, thus causing serious or potentially serious injury to Coyazo. In obtaining the loans from Coyazo, Evans was dealing with a client who was particularly vulnerable, had no particular knowledge of mortgages, and lacked experience in dealing with large sums of money. Coyazo had a limited understanding of such matters and relied heavily on the guidance of Evans and the trust she placed in him.

In obtaining three separate $20,000 loans from Coyazo, Evans' conduct caused serious or potentially serious injury to the client and violated Rule 16–108(A) on each occasion. The relationship between a debtor and a lender is inherently adversarial in nature. By entering into such a relationship with his client, without first fully apprising the client of their differing interests and without complying with the provisions of Rule 16–108(A), Evans breached his duty of professional loyalty owed to Coyazo. Furthermore, Evans' conduct with respect to his business transactions with Coyazo violated Rules 16–804(C) and 16–804(H).

In July 1989, Jeff Knight and Jeanette L. Knight retained Evans to represent them regarding personal injuries and property damage suffered in an accident in which their vehicle collided with a cow on Interstate 25 near Hatch, New Mexico. Subsequently, Evans represented to the Knights that he was pursuing a lawsuit against the State Highway Department as well as the owners of the cow. Between April 1992 and February 1993, Ms. Knight made at least 64 long distance calls to Evans' law office in an effort to speak with him about the status of the case. Evans failed to respond to the calls. Additionally, in May 1992 and February 1993, Ms. Knight mailed certified letters to Evans detailing efforts to contact him and requesting a response, which Evans failed to answer. Ultimately, Evans failed to file the suit on behalf of the Knights with respect to the accident or otherwise resolve the matter. As a result, the statute of limitations expired on the personal injury and property damage claims.

In representing the Knights, Evans was found to have failed to act with diligence and promptness and such failure caused serious or potentially serious injury to those clients. Evans' conduct with respect to his representation of the Knights was, therefore, in violation of Rules 16–101, 16–103, 16–104(A), and 16–804(H).

Additionally, the disciplinary board determined that Evans properly was notified of the disciplinary complaints filed by Coyazo, Ms. Knight, and a third client, John F. Ramzy. Nevertheless, Evans failed to respond to disciplinary counsel regarding the Knight complaint and the Coyazo complaint. With regard to the Ramzy complaint, Evans failed to respond to requests for supplemental information submitted by disciplinary counsel. It was concluded that Evans engaged in bad faith obstruction of disciplinary proceedings by intentionally failing to cooperate with disciplinary counsel on multiple occasions. Evans, therefore, was found to have violated Rule 16–803(D).

In June 1991, Alan Chapman and Neil Fraembs, on behalf of Action Auto Parts & Towing, retained Evans to represent them in the purchase of a wrecker business, for

which Evans was paid $3,000.00 as a retainer. Additionally, Chapman and Fraembs also paid $1,000.00 to Evans to be held in escrow for the purchase of the business. Evans subsequently drafted a purchase and sale agreement, and, as part of the agreement, Evans was appointed escrow agent for the transaction. The purchasers acknowledged in the agreement that they paid $1,000.00 to Evans as escrow agent and agreed he would hold that money in trust for the benefit of the seller upon execution of the contract. Additionally, as part of the purchase and sale agreement, Evans agreed to make application on or before September 1, 1991, to the State Corporation Commission for the transfer of certain certificates of public convenience and necessity associated with the business and to make application on behalf of the purchasers to expand the territory to be served by said certificates.

Although Evans agreed to file the application for transfer of the certificates of public convenience and necessity with the State Corporation Commission on or before September 1, 1991, the purchasers determined that the State Corporation Commission had no record of any filing made by Evans. Between September 1 and October 3, 1991, Chapman and Fraembs attempted to determine the status of the filing with the State Corporation Commission and were assured by Evans that he would fulfill his obligation to complete the filing. Evans subsequently failed to file the application for transfer of the certificates and also failed to make application to expand the proposed territory to be served by the certificates.

On or about December 10, 1991, Chapman and Fraembs terminated the representation and requested a conference with Evans to discuss the termination arrangements. Evans advised them that he would make final arrangements, send an itemized statement of account within one week, and refund any portion of the original retainer, all of which he failed to do. Additionally, Evans did not return the $1,000.00 escrow amount previously deposited with him at the time of his clients' attempted purchase of the business.

The disciplinary board found that Evans subsequently converted the escrow payment for his personal use and failed to account for it.

Based upon the above-described conduct, the disciplinary board found Evans in violation of Rule 16–104(A) by his failure to keep Chapman and Fraembs reasonably informed regarding the status of their legal matters. Evans also failed to hold the client funds belonging to Chapman and Fraembs separate from his own property in violation of Rule 16–115(A). Furthermore, Evans failed to promptly deliver to Chapman and Fraembs funds they were entitled to receive and failed to render a full accounting regarding the funds in violation of Rule 16–115(B).

In December 1991, Evans agreed to represent Jose Rodriguez in a child custody case and a separate case involving child support arrearage. Between December 1991 and June 1992, Rodriguez was unable to obtain information from Evans regarding the status of his cases. Rodriguez thereafter requested that Evans provide an accounting regarding a $1,500.00 retainer and refund any remaining balance. The disciplinary board subsequently determined that Evans failed to keep Rodriguez reasonably informed regarding the status of his legal matters in violation of Rule 16–104(A).

Evans was retained to represent J.M. Heck and Patricia Davis Heck in a case titled *State, ex rel., Udall v. Heck,* Dona Ana County Cause No. CV–88–574. In the course of the aforementioned litigation the State of New Mexico appealed the form of the district court's judgment and permanent injunction and the matter was assigned to the summary calendar by the New Mexico Court of Appeals. The disciplinary board found that Evans discussed the appeal with the Hecks and advised them that the Court of Appeals would reverse the trial court's form of judgment in accordance with the decision in *State, ex rel., Stratton v. Alto Land & Cattle Co.,* 113 N.M. 276, 824 P.2d 1078 (Ct.App. 1991).

On April 17, 1992, the Court of Appeals entered a memorandum opinion granting the

state's relief and summarily reversing the district court's entry of its form of judgment and permanent injunction. The memorandum opinion noted that Evans failed to file a response on behalf of the Hecks. Subsequently, the Hecks discharged Evans by letter. However, Evans was apparently unaware of the Hecks' letter discharging his service and agreed to the form of the amended judgment on mandate and permanent injunction prepared by the Attorney General's office. The disciplinary board found that Evans' approval was simply a formality as the permanent injunction was mandated by the Court of Appeals and was approved by Evans only as to form. However, the disciplinary board found that Evans failed to communicate with the Hecks regarding the summary reversal. The Hecks learned of the entry of judgment on the mandate by way of a newspaper article on June 30, 1992.

The Hecks subsequently retained other counsel who attempted to recover the case file from Evans by correspondence dated August 6 and 27, 1992; however, Evans failed and refused to turn over the client files. The Hecks' new attorney finally recovered the client files by having a subpoena issued for their return. As a result, the disciplinary board found that Evans failed to give reasonable notice to the clients and failed to surrender papers and property to which the clients were entitled. In representing the Hecks, Evans also was found to have failed to keep his clients reasonably informed about the status of their legal matters in violation of Rule 16–104(A).

In September 1990, Connie S. Ledesma retained Evans to represent her regarding personal injuries arising out of an automobile collision. Evans engaged in settlement negotiations on behalf of Ledesma and reached an agreement with Teachers' Insurance Company to settle the case for a total sum of $50,000.00. On March 19, 1992, Teachers' Insurance Company issued its draft in the sum of $50,000.00 payable to Ledesma and Evans. Evans subsequently requested that Ledesma endorse the draft so he could negotiate it and pay Ledesma her portion of the settlement funds. At the time Ledesma endorsed the draft, Evans told her that it would take approximately ten working days for the draft to clear after which time she would receive payment. After expiration of the ten days, Ledesma contacted Evans and was told that he was holding the draft and had not yet received payment for it. Evans advised Ledesma that as soon as the draft was negotiated she would be paid her portion of the settlement proceeds. After a period of time Ledesma again inquired as to when she would receive her settlement proceeds. Evans informed her that he had held the draft more than ninety days, that it had expired, and that he would obtain a new draft and would then pay Ledesma her portion of the settlement proceeds. Ledesma continued to inquire about the payment of her settlement proceeds and was advised by Evans that she would receive not only the proceeds of the settlement with Teachers' Insurance Company but also additional monies in settlement of the claims arising out of the collision.

Ledesma thereafter retained new counsel and, on January 22, 1993, by and through her new attorney, made formal demand upon Evans for payment of the settlement funds and for return and delivery of her file on the claim arising out of the automobile collision. Despite Ledesma's demand, Evans failed and refused to pay her any portion of the settlement proceeds or to return her file in order to allow her to pursue her claims through new counsel.

It was subsequently determined that on March 23, 1992, Evans presented the $50,000.00 settlement draft for collection at the First National Bank of Dona Ana County. Evans deposited the $50,000.00 settlement draft into a checking account. The draft was paid by Teachers' Insurance Company on March 25, 1992. The disciplinary board found that Evans commingled Ledesma's funds with his own in breach of his duty as her attorney by depositing the $50,000.00 into a personal checking account that was not a designated trust account. The disciplinary board also found that, between March 1992 and September 1992, Evans converted pro-

ceeds of his client's settlement for personal use and failed to account for the $50,000.00 settlement. On August 21, 1992, the checking account into which Evans deposited the Ledesma settlement funds was the subject of an IRS levy. At the time Evans' checking account was levied against by the IRS, the account had a balance of $68.04. By September 1992, the balance of Evans' checking account at the First National Bank of Dona Ana County had been depleted and the account subsequently was closed.

In representing Ledesma, Evans was found to have failed to hold client funds belonging to his client separate from his own property in violation of Rule 16–115(A). Evans also was found to have failed to promptly deliver to Ledesma funds that she was entitled to receive and failed to properly render a full accounting regarding said funds in violation of Rule 16–115(B). Evans also was found to have converted the $50,000 settlement of the Ledesma personal injury case for his own personal use. Evans engaged in conduct involving dishonesty, fraud, deceit, and misrepresentation in violation of Rule 16–804(C), conduct prejudicial to the administration of justice in violation of Rule 16–804(D), and conduct adversely reflecting on his fitness to practice law in violation of Rule 16–804(H).

Additionally, the disciplinary board determined that Evans properly was notified of the disciplinary complaints filed by Alan Chapman and Neil Fraembs, Jose Rodriguez, and Connie Ledesma. In the course of the investigation of these complaints, Evans failed to respond to communications from disciplinary counsel and thereby failed to cooperate with disciplinary counsel in the discharge of their duties in violation of Rule 16–803(D).

The Court hereby adopts the findings of fact, conclusions of law, and recommendations of the disciplinary board. Based on the serious nature of the multiple violations committed by Evans as well as the extent of the aggravating factors present in these particular cases, the Court agrees that the discipline to be imposed is appropriate.

NOW, THEREFORE, IT IS ORDERED that the recommendation of the disciplinary board hereby is adopted and Jake R. Evans is DISBARRED from the practice of law effective August 24, 1994;

IT IS FURTHER ORDERED that, prior to the filing of a petition for reinstatement, Evans shall satisfy the following conditions:

1. Evans shall account for all funds borrowed from Consuelo Coyazo and repay these monies in full;

2. Evans shall account for all funds entrusted to him by Neil Fraembs, Alan Chapman, Jose Rodriguez, and Connie Ledesma;

3. Evans shall repay in full all monies owed to Neil Fraembs, Alan Chapman, and Connie Ledesma at an interest rate of fifteen percent (15%) per annum from the dates of the deposit of the Ledesma settlement check and from the date of deposit in the Chapman/Fraembs escrow fund; and

4. Evans shall take and pass the Multistate Professional Responsibility Exam.

IT IS FURTHER ORDERED that Evans shall provide notice to all of his clients of his disbarment pursuant to Rule 17–212;

IT IS FURTHER ORDERED that Michael W. Lilley hereby is appointed to inventory Evans' files and trust accounts pursuant to Rule 17–213; and

IT IS FURTHER ORDERED that the costs of these disciplinary proceedings in the amount of $6,195.41 are assessed against Evans and shall be paid to the disciplinary board on or before August 24, 1995. Any amounts not paid by that date shall bear interest at the rate of fifteen percent (15%) per annum until paid, and a transcript of judgment will be issued by this Court for any amounts not paid by August 24, 1995.

IT IS SO ORDERED.