1997-NMSC-025

940 P.2d 171

**In the Matter of Richard W. DARNELL, An Attorney Admitted to Practice Before the Courts of the State of New Mexico.**

**No. 24115.**

Supreme Court of New Mexico.

June 2, 1997.

David Baca, Deputy Disciplinary Counsel, Albuquerque, for Disciplinary Board.

Richard Darnell, Socorro, Pro Se.

## OPINION

PER CURIAM.

This matter came before the Court following two separate disciplinary proceedings conducted pursuant to the Rules Governing Discipline, 17–101 to 17–316 NMRA (1997), in which the respondent attorney, Richard W. Darnell, was found to have committed multiple violations of the Rules of Professional Conduct, 16–101 to 16–805 NMRA (1997). Following a full evidentiary hearing held in disciplinary number 04–96–299, the disciplinary board submitted findings of fact, conclusions of law, and recommendations for consideration by this Court. We adopt the disciplinary board's findings of fact and conclusions of law as well as the recommendations of the disciplinary board that respondent be disbarred from the practice of law pursuant to Rule 17–206(A)(1). In addition,

certain conditions are imposed that must be satisfied before consideration of any future petition for reinstatement.

The second matter, disciplinary number 10–96–307, came on for consideration upon request of the disciplinary board to adopt its recommendation to approve a conditional agreement not to contest and consent to discipline. Pursuant to the conditional agreement not to contest and consent to discipline, respondent agreed to disbarment and to certain conditions that must be satisfied before consideration of any future petition for reinstatement. We also adopt the recommendations of the disciplinary board in disciplinary number 10–96–307 and hereby approve the conditional agreement not to contest and consent to discipline.

Disciplinary number 04–96–299 stemmed from a complaint filed by respondent's former clients Joe and Vickie Gonzales and Leo Rosas. The Gonzaleses consulted with respondent regarding certain federal and state tax obligations and, in March 1995, a friend of theirs agreed to submit a check to respondent in the amount of $10,000 for the proposed settlement of the Gonzaleses' tax obligations. On March 10, 1995, respondent deposited the $10,000 check. By the end of March 1995, a substantial portion of the $10,000, which was to be held in trust on behalf of the Gonzaleses, had been removed from the trust account by respondent. Furthermore, at no time did respondent utilize the $10,000 to resolve his clients' tax liabilities and instead, the disciplinary board found that the $10,000 was withdrawn from the trust account and misappropriated by respondent.

In the course of the representation, respondent advised his clients that a bankruptcy proceeding would be appropriate in order to address the aforementioned tax obligations, and he thereafter filed a Chapter 7 Petition on their behalf. A final order closing the bankruptcy case was entered on or about July 5, 1995; however, following the entry of the final order, the Gonzaleses continued to receive delinquent tax notices.

For the next several months, the Gonzaleses requested information regarding the status of their case, however, respondent failed to respond to their requests. By July 1995, the Gonzaleses retained new counsel who wrote to respondent terminating the representation and requesting their complete file, a full accounting of all monies paid to respondent, and the return of all money remaining in trust. Respondent subsequently delivered the clients' file to their new attorney; however, he failed to provide an accounting of the $10,000 entrusted to him.

In the course of the investigation of this disciplinary matter, respondent submitted copies of a trust account ledger and a monthly statement dated August 25, 1995, which he relied on in an effort to show that he had accounted for the $10,000. Respondent claimed that on August 25, 1995, trust account check number 10397, in the amount of $8,324.83, was mailed to his clients' friend who initially tendered the $10,000. That check was never cashed, nor was it returned to respondent undelivered. The Gonzaleses' friend testified that he did not receive a statement from respondent dated August 25, 1995, nor did he receive trust account check number 10397. The August 25, 1995, statement also showed that respondent paid himself $1,675.17 as the balance due for work performed on behalf of the Gonzaleses; however, monthly trust account bank statements did not reflect a transfer of $1,675.17 from respondent's trust account.

Bank records introduced at the disciplinary hearing also showed that the beginning balance of respondent's trust account in August of 1995 was $640.85, and the ending balance for August of 1995 was $594.21. Therefore, had trust account check number 10397 been presented for payment, it would not have cleared the bank due to the fact that respondent's trust account did not contain a balance sufficient to allow for the payment of that check.

The trust account checks that cleared respondent's account in August of 1995, were numbered 10381, 10382 and 10383. Trust account checks numbered 10394, 10396, 10398 and 10399, the checks surrounding number 10397, were paid and cleared respondent's trust account during the month of January, 1996. The disciplinary board found that trust account check number 10397 was

not written in August of 1995 and if said check was ever issued, the earliest it could have been submitted to Raymond Plank would have been in January of 1996.

On October 29, 1996, and within a week of the commencement of the disciplinary hearing, respondent mailed a check in the amount of $10,000 to the Gonzaleses' friend. Included with that check was a monthly statement, which again indicated that trust account check number 10397 in the amount of $8,324.83 was previously tendered on August 25, 1995. The disciplinary board found that respondent prepared trust account check number 10397, the monthly statement dated August 25, 1995, and the Gonzaleses' trust account ledger no sooner than January of 1996. The disciplinary board also found that respondent attempted to mislead disciplinary counsel and the hearing committee by using a copy of trust account check number 10397, the August 25, 1995 statement and the trust account ledger to attempt to show that he accounted for the $10,000.

Respondent also stated to disciplinary counsel and the hearing committee that the unaccounted for $10,000 had inadvertently been paid to another client by way of a transposition arising from a real estate transaction. When questioned regarding his trust account records, respondent could not specifically recall the date of the claimed transposition. Other than his own testimony, respondent provided no evidence to support his contention that a trust account transposition occurred.

On the basis of the above conduct the disciplinary board found that the respondent violated a number of provisions of the Rules of Professional Conduct: Rule 16–101 by failing to provide competent representation to his clients; Rule 16–102(A) by failing to abide by the client's decisions concerning the objectives of the representation and by failing to communicate as to the means by which the objectives were to be pursued; Rule 16–103 by failing to act with reasonable diligence and promptness while representing the Gonzaleses; and, Rule 16–104(A) by failing to keep his clients reasonably informed about the status of their case and by failing to promptly comply with reasonable requests for information.

■ The inadequacy of respondent's representation of the Gonzaleses pales in comparison with his multiple trust account violations. Misappropriation of client funds is a most egregious breach of an attorney's fiduciary duties and generally results in disbarment. See In re Kelly, 119 N.M. 807, 896 P.2d 487 (1995); In re Schmidt, 121 N.M. 640, 916 P.2d 840 (1996); In re Greenfield, 121 N.M. 633, 916 P.2d 833 (1996).

In the instant case, respondent failed to act with honesty and integrity, misappropriated trust funds and then attempted to mislead the disciplinary board regarding his actions. Respondent violated Rule 16–115(A) by failing to hold trust funds that were in his possession in connection with a representation separate from his own funds, and failed to properly identify and safeguard those funds; Rule 16–115(A) by misappropriating funds entrusted to him which were to be held in trust for the benefit of his clients; Rule 16–115(B) by failing to promptly return the trust funds and by failing to render a full and prompt accounting when his representation subsequently was terminated by the Gonzaleses; and, Rule 16–116(D) by failing to take necessary steps in order to protect the clients' interests, by failing to promptly surrender papers and property which the clients, or third persons, were entitled to receive and by failing to refund advanced payments of fees not earned.

■ Between 1993 and 1995, respondent provided legal assistance and counsel to Leo Rosas and his family. In July 1993, respondent redrafted a last will and testament for Mr. and Mrs. Rosas. In November 1993, respondent borrowed money from the Rosases that he repaid in April 1994. The disciplinary board found that respondent was generally familiar with the assets of Mrs. Rosas' estate and he knew that Mr. Rosas was the beneficiary of his wife's life insurance policy.

Prior to Mrs. Rosas' death, respondent took a second loan of $3,500 from Mr. Rosas. Mrs. Rosas died in September 1994, and respondent subsequently reviewed probate

issues with Mr. Rosas. Following Mrs. Rosas' death, respondent continued to provide legal assistance to Mr. Rosas. After Mr. Rosas received the proceeds of his wife's life insurance policy, respondent asked to borrow an additional $10,000. In November 1994, Mr. Rosas loaned an additional $10,000 to respondent, which he then deposited into his trust account.

It was Mr. Rosas' understanding that respondent would repay the loan no later than January 1995. After respondent failed to repay the loan as previously agreed, Mr. Rosas made several demands for payment. In July 1995, respondent gave Mr. Rosas a trust account check in the amount of $20,000. When respondent tendered the $20,000 trust account check, he advised Mr. Rosas that the check was not good at that time but that within a week or two he would have sufficient funds in the account to cover the check.

Thereafter, Mr. Rosas retained counsel to assist him in collecting the debt from respondent. On the advice of counsel, Mr. Rosas deposited the $20,000 trust account check, however, it was returned for nonsufficient funds. Bank records showed that respondent subsequently stopped payment on the $20,000 trust account check. As the result of respondent's failure and refusal to repay the loan, Mr. Rosas filed a complaint for debt and money due in the Seventh Judicial District Court in a case titled *Rosas v. Darnell,* No. CV 95–106. Respondent did not enter an appearance, filed no motion or answer in the case of *Rosas v. Darnell* and, on December 13, 1995, a default judgment was entered against respondent.

The disciplinary board found that at the time the loan was made, there existed an attorney-client relationship between respondent and Mr. Rosas. Furthermore, the Disciplinary board concluded that respondent did not comply with the provisions of Rule 16–108(A) when he entered into the loan arrangement with Mr. Rosas.

Business transactions with or adverse to a client are governed by Rule 16–108(A), which provides as follows:

A. **Business transactions with or adverse to a client.** A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;

(2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

(3) the client consents in writing thereto.

This Court has previously noted that "[t]he relationship between a debtor and a lender is inherently adversarial in nature". *In re Evans,* 119 N.M. 305, 307, 889 P.2d 1227, 1229 (1995). Attorneys should, therefore, avoid such adversarial relationships with their clients. Furthermore, should an attorney engage in any business dealings with a client, there must be full and complete compliance with the requirements of Rule 16–108(A) prior to the commencement of the transaction.

Respondent violated Rule 16–108(A) by entering into a business transaction which was adverse to his client; Rule 16–108(A) by entering into a business transaction with his client, the terms of which were not fair and reasonable, and also by failing to fully disclose or transmit to the client the terms of the transaction and by failing to give the client a reasonable opportunity to seek the advice of independent counsel in the transaction; and Rule 16–115(A) by commingling loan money borrowed from his client into his trust account and by subsequently issuing a trust account check to his client in the amount of $20,000 knowing that there were non-existent funds in the trust account to cover said check. The loan transaction in this case was further aggravated by the fact that in September 1990, respondent was informally admonished by disciplinary counsel for having commingled personal funds by depositing a personal loan into his trust account.

With regard to the complaints filed by the Gonzaleses and Mr. Rosas, the disci-

plinary board also found that respondent violated Rule 16–801(B) by failing to respond to lawful requests for information from disciplinary counsel and Rule 16–803(D) by failing to cooperate with disciplinary counsel. It is imperative that attorneys give their full cooperation and assistance to the disciplinary board and the office of disciplinary counsel. In this case, not only did respondent fail to respond to requests for information, he further aggravated serious violations of the Rules of Professional Conduct by attempting to mislead disciplinary counsel and the hearing committee. Any obstruction of the disciplinary process will not be tolerated.

In the course of representing the Gonzaleses and Mr. Rosas, respondent engaged in conduct involving dishonesty, fraud, deceit and/or misrepresentation. Respondent also engaged in conduct prejudicial to the administration of justice and conduct that adversely reflects on his fitness to practice law. Respondent was found to have violated Rule 16–804(C), Rule 16–804(D), and Rule 16–804(H). This type of egregious behavior by an attorney licensed to practice demonstrates a lack of honesty and integrity and merits no less than disbarment.

While proceedings in disciplinary number 04–96–299 were pending against respondent, a second set of disciplinary charges were filed against him in disciplinary number 10–96–307. Disciplinary number 10–96–307 arose from a disciplinary complaint filed by William E. Bilbrey who is the personal representative of the estate of Jesse R. French. As the attorney for the estate, money was entrusted to respondent with the understanding that it was to be placed in a trust account for the benefit of the estate.

The specification of charges alleged that, in the course of the representation, respondent failed to take timely action regarding the filing of an estate inventory and also failed to properly address certain estate tax issues. Furthermore, it was alleged that when respondent's representation of the estate was terminated, he failed and refused to account for the money that was to be held in trust and also did not immediately return the trust funds as requested by subsequent counsel. The specification of charges filed

against respondent also alleged that he converted the money either by commingling the money with his own funds or by misappropriating the funds altogether. Respondent also was charged with failing to respond to requests for information from disciplinary counsel and also with failing to cooperate with disciplinary counsel during the investigation of the Bilbrey complaint.

Respondent subsequently entered into a conditional agreement not to contest and consent to discipline in disciplinary number 10–96–307. In that regard, respondent agreed not to contest the allegations contained in the specification of charges that he violated Rules 16–101, 16–104(A), 16–115(A), 16–115(B), 16–116(D), 16–801(B), 16–803(D), 16–804(C), 16–804(D), 16–804(H), and 17–204. Pursuant to that agreement, respondent consented to be disbarred pursuant to Rule 17–206(A)(1), and also agreed that he may only file a motion for permission to apply for reinstatement pursuant to Rule 17–214(A) upon a showing that he has satisfied certain conditions.

The Court hereby adopts the findings of fact, conclusions of law and recommendations of the disciplinary board in disciplinary number 04–96–299 and disciplinary number 10–96–307. Based on the serious nature of the multiple violations committed by respondent as well as the extent of the aggravating factors present in these particular cases, the Court agrees that the discipline to be imposed is appropriate.

THEREFORE IT IS ORDERED that the recommendations of the disciplinary board in disciplinary number 04–96–299 and disciplinary number 10–96–307 are hereby ADOPTED and Richard W. Darnell is DISBARRED from the practice of law pursuant to Rule 17–206(A)(1) effective April 23, 1997.

IT IS FURTHER ORDERED that respondent may not file a motion for permission to apply for reinstatement for a period of at least three years from the effective date of disbarment as provided by Rule 17–214(A), and only upon a showing that he has satisfied the following conditions:

a. He has accounted for all funds borrowed from Leo Rosas and repaid those monies in full;

b. He has successfully taken and completed the Multistate Professional Responsibility Examination;

c. He has successfully taken and completed the New Mexico State Bar Examination; and

d. He has successfully completed fifty (50) hours of Continuing Legal Education in the area of ethics, trust account management and law office management above and beyond the Continuing Legal Education requirements of New Mexico prior to his seeking reinstatement.

IT IS FURTHER ORDERED that should respondent be reinstated to the practice of law he be placed on supervised probation for a period of twenty-four (24) months with a supervising attorney to be appointed by the office of disciplinary counsel upon his reinstatement, the costs of the supervising attorney's time to be paid by respondent.

IT IS FURTHER ORDERED that an attorney shall be appointed to inventory the respondent's files.

IT IS FURTHER ORDERED that respondent shall provide the required notice of his disbarment to his clients, courts, and opposing parties pursuant to Rule 17–212.

IT IS FURTHER ORDERED that respondent shall pay the costs of the investigation and proceedings in disciplinary number 04–96–299 in the amount of $2,666.70, and disciplinary number 10–96–307 in the amount of $119.05, on or before May 23, 1997.

IT IS FURTHER ORDERED that the disposition of this matter shall have the full force and effect of a judgment.

IT IS SO ORDERED.

McKINNON, J., not participating.