697 P.2d 943

**In the Matter of John P. DUFFY, Attorney At Law.**

**No. 15781.**

Supreme Court of New Mexico.

April 4, 1985.

## OPINION

This matter having come before this Court on March 13, 1985, after completion of disciplinary proceedings conducted pursuant to NMSA 1978, Rules Governing Discipline (Repl.Pamp.1983), wherein Attorney John P. Duffy was found to have engaged in four acts of misconduct involving misrepresentation and moral turpitude prejudicial to the administration of justice, the Court adopts the findings and recommendations of the Disciplinary Board.

Between June 1983 and February 1984 Attorney Duffy was employed as an associate attorney in the law firm of Threet and King (hereinafter "the law firm") in Albuquerque, New Mexico. He was assigned to handle collection matters for clients of the law firm. In the handling of collection matters, checks from clients for suit fees and costs and payments from debtors to clients were transmitted by the attorney responsible for the case to the law firm's bookkeeper, who would deposit the checks into the firm's trust account after posting them on accounting ledger cards which identified each client account. This procedure had been explained to Attorney Duffy by the law firm's office administrator.

In his capacity as an associate attorney, Duffy represented Kinney Brick Company in a collection matter against Daybreak Corporation (firm file number 90–6250). Two checks accompanied by cover letters were sent to Duffy from the debtor Daybreak, both subscribed with annotations "file No. 90–6250" and "Kinney Brick Co." Duffy forwarded the first check to the bookkeeper, who posted it to Kinney Brick Company's account, but endorsed the sec-

ond check for $278.09 in his own name and negotiated it for his own personal account. This second check from the Daybreak Corporation was never sent by Duffy to the law firm's bookkeeper nor credited to the client's ledger card.

During his employment with the law firm, Duffy also represented Forest Furniture in a collection suit against Oak Plus and received a check from his client in the amount of $600 for suit fees to undertake the representation of Forest Furniture's claim. Duffy acknowledged receipt of the check for suit fees in a letter dated November 21, 1983. Again, he did not forward the check for $600 to the law firm's bookkeeper, but signed his own name on the back of the check from Forest Furniture and negotiated it for his own use. A cover letter indicating the payment of the requested suit fees from his client's collection forwarder, Manufacturer's Credit, was never placed in the firm's file.

Duffy also represented Fujitsu Ten Corporation in a collection suit against Fourtronics through Fujitsu's insurer, the London Guarantee and Accident Co. of New York, designated as firm file number 90–6015. A check for $320 for suit fees and costs was sent by London Guarantee and Accident Co. and named on the face of the check the Fujitsu Ten Corporation as the insured and Fourtronics as the debtor. The check also indicated the firm file number 90–6015 and was made out to the name of the law firm, Threet and King. Duffy endorsed the check in his own name and then negotiated it for his own use.

On November 11, 1983, a check for $50, made payable to Duffy was sent on behalf of his client, Interstate Battery Systems of Albuquerque, in the name of his client's collection forwarder, IC Systems, Inc. Duffy was representing his client against a debtor called Smart. Duffy again signed his own name to the check and negotiated it for his own use. He did not open a file on the case for his client nor did he forward the check to the firm's bookkeeper for proper posting and credit. Duffy nego-

tiated for his own use checks for suit fees and costs totaling $1,248.09.

These conversions of client funds were not discovered by the law firm until after Duffy had left his position in 1984. Upon discovery by the law firm, the disciplinary board was notified by the law firm, the clients were immediately credited for these funds by the firm, and demand was made by the firm upon Duffy for reimbursement. Duffy repaid the firm and claimed he had mistakenly believed in good faith that the checks were payments to him for rent on certain properties he owned at the time.

Duffy privately owned and rented apartment units in Albuquerque and conducted his personal real estate business from the law office where he worked during the time he was an associate attorney with the law firm. Nevertheless, he did not maintain a regular set of books which recorded his tenants and the amounts received by him as rent checks at the law firm office. In addition, Duffy did not inquire or check about whether the checks he cashed were rental checks or checks for clients of the law firm.

■ In the absence of any evidence in the record to support this claim, Duffy's explanation was specifically rejected by the hearing committee of the Disciplinary Board. Duffy's conduct in converting his clients' funds to his own use violates NMSA 1978, Code of Prof.Resp.Rules 1–102(A)(3), 1–102(A)(4), 1–102(A)(5), 1–102(A)(6), and 9–102 (Repl.Pamp.1982).

■ Although Duffy made restitution to the law firm when his conversion of these funds was discovered, this subsequent action does not excuse his misconduct or render him inculpable. His conduct in the handling of these collection matters is compounded by his conversion of client funds that were entrusted to him. As this Court has previously held:

[W]henever an attorney is found to have engaged in intentional conduct involving dishonesty * * * there is a strong indication that a person is unfit for membership in the Bar of this State. A lawyer's

license to practice is a representation that the holder is one who can be trusted to act with honesty and integrity.

*In re Ayala,* 102 N.M. 214, 693 P.2d 580 (1984). In such cases, disbarment is an appropriate sanction for this kind of conduct.

■ After receiving notice that the Disciplinary Board had recommended his disbarment to this Court, Duffy petitioned the Court for permission to resign pursuant to NMSA, 1978, Rules Governing Discipline Rule 14 (Repl.Pamp.1983). The Court denies that petition. The purpose of Rule 14 is not to allow attorneys to escape sanctions after findings of misconduct have been made and adopted by the Disciplinary Board. Moreover, resignation by Attorney Duffy is not permissible in this instance where it has been found that he engaged in intentional misconduct involving misrepresentation and moral turpitude in the misappropriation of his clients' funds.

IT IS THEREFORE ORDERED that Duffy be and hereby is disbarred, and his license to practice law in New Mexico is revoked.

IT IS FURTHER ORDERED that the Clerk of the Supreme Court forthwith strike the name of John P. Duffy from the roll of those persons permitted to practice law in New Mexico and that this Order be published in the *New Mexico Reports* and in the State Bar of New Mexico *News and Views.*

The costs of this proceeding in the amount of $440.84 are hereby assessed against Duffy, and the Court calls to the attention of the Disciplinary Board the provisions of NMSA 1978, Disc.Brd.P.Rule 4(b)(1) (Repl.Pamp.1983).

IT IS SO ORDERED.

/s/ William R. Federici
WILLIAM R. FEDERICI,
Chief Justice

/s/ Dan Sosa, Jr.
DAN SOSA, Jr.,
Senior Justice

/s/ Harry E. Stowers
Harry E. Stowers, Jr.,
Justice

/s/ Mary C. Walters
MARY C. WALTERS,
Justice

RIORDAN, J., specially concurring.

RIORDAN, Justice (specially concurring).

I fully concur with the Court's decision in disbarring Mr. Duffy. However, I cannot concur in the opinion because of the Court's unwillingness to refer this matter to the appropriate prosecuting authority for possible criminal prosecution. NMSA 1978, Disc.Brd.P.Rule 4 (Supp.1984), does not apply to this case at this point. Rule 4 provides in part:

(a) **Confidentiality.** Except as otherwise provided by this rule, any investigation and any investigatory hearing conducted by or under the direction of disciplinary counsel, or their authorized agents, shall be entirely confidential *unless and until they become matters of public record by being filed in the Supreme Court,* or are otherwise released according to these rules.

(b) **Exceptions.** Information relating to disciplinary proceedings may be released by the disciplinary board as follows:

(1) where investigation reasonably causes the disciplinary board to believe in good faith that a crime may have been committed, the name of the subject, general nature of the possible crime and names of known witnesses to relevant facts shall be made available to an appropriate prosecuting authority * * *. (Emphasis added.)

This Rule merely allows the *disciplinary board* to release otherwise confidential information to the appropriate prosecuting authority while the case is pending. I am disappointed that they did not report this matter to the appropriate prosecuting authority when it was reported to them.

I believe that we should not only discipline lawyers who take advantage of the

position conferred upon them by the license we grant to practice law, but we should also assure that they do not receive special or preferential treatment from law enforcement. We should therefore turn over all information we have to the appropriate law enforcement officials or prosecuting authorities so they can determine if criminal prosecution is warranted, which procedure was followed by this Court in *In the Matter of Ortega,* 101 N.M. 719, 688 P.2d 329 (1984).

In this case, Duffy deposited checks in his account that did not belong to him and converted the funds to his own use. The matter should now be referred to the prosecuting authorities to determine if a crime was committed that should be prosecuted.