721 P.2d 405

**In the Matter of Louis G. STEWART, An Attorney Admitted to Practice Before the Courts of the State of New Mexico.**

**No. 16401.**

Supreme Court of New Mexico.

July 7, 1986.

## OPINION

This matter having come before this Court after disciplinary proceedings conducted pursuant to NMSA 1978, Rules Governing Discipline, Rule 16(g)(2) (Repl.1985) wherein Louis G. Stewart acknowledged having engaged in numerous acts of misconduct violative of NMSA 1978, Code of Prof.Resp. (Repl.1985) but argued that certain mitigating factors would preclude the imposition of the sanction of disbarment, the Court adopts the findings, conclusions, and recommendation of the disciplinary board and imposes disbarment.

The underlying facts of this case were not disputed but require some mention in view of their bearing on this decision. In numerous instances Stewart took money from clients but did little if any work on their behalf. In one case, he neglected to file a decree of divorce and, five years later, his client was forced to retain other counsel and request a decree to be entered *nunc pro tunc* to the date the divorce had been granted in order to legitimize her child from a subsequent marriage. In another, he was paid to handle an adoption but took no action whatsoever in the case for over two years. Frequently, Stewart sought to conceal his neglect by preparing bogus court orders granting the relief his clients had requested and giving them to his clients. He would forge the signature of the judge and superimpose a court stamp on the document by clever utilization of a copying machine.

Stewart was suspended from practice in the Federal district court and before the Court of Appeals for acts of neglect and failure to observe procedural rules.

Stewart also embezzled from or defrauded various clients of substantial sums of money. While handling a probate, he advised one client that he needed $15,700 for deposit with the court. Although he gave the client a manufactured receipt indicating that the funds had been deposited with the court clerk, Stewart in fact negotiated the check and kept the money for himself. In a workman's compensation case, he secured his client's signature on the $10,000 settlement check but thereafter never forwarded the client's share of the money to him, despite repeated requests by the client. There is no evidence the money was ever put into a trust account. Through these and similar schemes, Stewart stole approximately thirty-five thousand dollars ($35,000) from clients between 1979 and 1981. In 1983 he was convicted of the crime of fraud over $2500 (a third degree felony) and ordered to make restitution as a condition of probation.

Because of these and other acts of misconduct, Stewart was found to have committed fifty-three (53) separate violations of NMSA 1978, Code of Prof.Resp., Rules 1–102(A)(3), 1–102(A)(4), 1–102(A)(5), 1–102(A)(6), 2–106(A), 6–101(A)(1), 6–101(A)(3), 7–101(A)(1), 7–101(A)(2), 7–101(A)(3), 7–102(A)(2), 7–102(A)(3), 7–102(A)(5), 7–102(A)(6), 7–102(A)(8), 7–106(A), 7–106(C)(6), 7–106(C)(7), 9–102(A), 9–102(B)(3), and 9–102(B)(4) (Repl.1985).

Disciplinary charges were originally filed against Stewart in 1981, and a hearing was scheduled for February 1982. Shortly before the hearing, however, Stewart's attorney moved for a continuance citing as grounds Stewart's mental and physical infirmities which made it impossible for his client to adequately defend himself. Pursuant to NMSA 1978, Rules Governing Discipline, Rule 14(c) (Original Pamp.) this Court suspended Stewart from the practice of law on March 16, 1982. The matter was subsequently remanded to the Board for further proceedings. A hearing was held in December 1985.

Stewart presented evidence to the hearing committee that at the time he committed the acts of misconduct he was suffering from mental and physical problems which impaired ability to function as an attorney. Both Stewart's treating psychia-

trist and an expert witness retained by disciplinary counsel testified that Stewart has from birth suffered from nuclear aplasia, a condition which interrupts the nerves leading to his face and prevents him from moving his eyes or making any facial expressions. Both experts agreed that this unfortunate condition gave rise to deep psychological problems, including a depressive personality and various forms of addictive behavior. According to Stewart's treating physician, these disorders were present for many years but intensified during the late 1970's due to stress in Stewart's professional and private life. Until his suspension from the practice of law, however, Stewart took no steps to receive treatment for his condition.

The experts differed somewhat in their opinions of the degree to which Stewart's impairments explained or contributed to his misconduct. Stewart's own physician saw a significant relationship between Stewart's mental problems and his unethical behavior. He testified that Stewart knew what he was doing and knew right from wrong but that he was powerless under the circumstances to act any differently due to his overwhelming need to reassure himself that all was well. Stewart could not, according to his expert, accept the fact that he was incapable of dealing with the many problems in his life or bring himself to turn away clients or tell them he had neglected their cases. As a result, he resorted to deceit and subterfuge both to "satisfy" the clients and to finance his overextended life style.

The other expert witness, while in agreement with the psychological diagnosis and willing to acknowledge that Stewart's problems certainly interfered with his ability to function efficiently as an attorney, testified that Stewart was at all times in touch with reality and that his acts of dishonesty were "volitional and intentional." He further testified that during the period of his misconduct, Stewart was not under psychological duress to the point where he lost the ability to control his actions.

Stewart now claims that the hearing committee erred in adopting findings inconsistent with the testimony of his expert witness and that evidence of his mental impairment was virtually disregarded by the committee and the disciplinary board panel. We disagree. The committee and the board panel adopted findings that Stewart was suffering from nuclear aplasia, a depressive personality disorder, addictive behaviors, and possibly an organic brain syndrome and that he was under some stress during the period of his major acts of misconduct. The committee concluded, however, that while these conditions might explain to some extent Stewart's acts of neglect of cases and failure to meet deadlines, they neither explained nor excused his acts of dishonesty, misrepresentation and fraud. There is ample evidence in the record to support these findings and conclusions.

It should be noted that neither of the expert witnesses could offer any basis for a belief that Stewart's problems have been or could be completely cured. Stewart's expert testified that while Stewart had recovered somewhat from acute depression, the disorder would always be a part of his character and that prognosis for a full recovery was only "fair." Neither expert could offer any assurance that Stewart would not engage in similar conduct if licensed to practice law in the foreseeable future. Stewart's physician stated that Stewart could probably function successfully only in a structured environment where there was "an absence of the pressures and demands of shifting and competing priorities." We are unaware of such a place of serenity in our profession.

█ Stewart admits that he has had a long history of disciplinary problems dating back to the 1960's. These are not isolated instances of misconduct, and the record before us indicates the presence of numerous other aggravating factors. The committee found that in many cases, Stewart was motivated by a desire for selfish gain. The victims of his dishonesty were his own clients, many of whom were unsophis-

ticated and extremely vulnerable. The harm inflicted upon these clients was in some instances monumental. While some restitution has been made, none was paid prior to Stewart's being ordered to do so when placed on probation after his criminal conviction. Restitution made only under pressure is entitled to no weight as a mitigating factor. Stewart has shown only a moderate degree of remorse and appears more concerned with seeking to explain his actions than with accepting responsibility for them.

■ We are also mindful of the fact that the outlook for Stewart's recovery is at best guarded. In weighing the appropriateness of suspension versus disbarment, we must consider whether it has been shown that the psychiatric condition is amenable to treatment and whether the prognosis for full rehabilitation has been established. Neither showing has been made in this case.

■ While we sympathize with Stewart's psychological problems, we cannot overlook the many factors in aggravation. Nor can we ignore our responsibility to the public to see that professional standards are enforced. This must be our primary concern in all cases involving attorney discipline. Our duty is to assure that the public is protected from dishonest attorneys, whatever the explanation for the dishonesty.

■ IT IS THEREFORE ORDERED that Louis G. Stewart be, and he hereby is, disbarred from the practice of law pursuant to NMSA 1978, Rules Governing Discipline, Rule 11(a)(1) (Repl.1985).

IT IS FURTHER ORDERED that this opinion be published in the *New Mexico Reports* and in the State Bar of New Mexico *News and Views*.

Costs of this proceeding in the amount of $5404.34 are assessed against Stewart and should be paid to the Disciplinary Board on or before December 31, 1986.

IT IS SO ORDERED.

RIORDAN, C.J., and WALTERS, J., not participating.