2001-NMSC-021

29 P.3d 527

**In the Matter of Orlando A. QUINTANA, Esquire, An Attorney Licensed to Practice Law Before the Courts of the State of New Mexico.**

**No. 26,646.**

Supreme Court of New Mexico.

Aug. 16, 2001.

Sally Scott–Mullins, Deputy Chief Disciplinary Counsel, Albuquerque, NM, for the Disciplinary Board.

Orlando A. Quintana, Clovis, NM.

OPINION

PER CURIAM.

{1} Two sequential disciplinary proceedings concerning the conduct of Orlando A. Quintana were conducted pursuant to the Rules Governing Discipline, Rules 17–101 to –316 NMRA 2001. In each proceeding, respondent committed multiple violations of the Rules of Professional Conduct, Rules 16–101 to –805 NMRA 2001. Due to the serious nature of the violations, Orlando A. Quintana is disbarred from the practice of law for a minimum of five years, with conditions for reinstatement and a mandatory period of probation if he is reinstated.

{2} The specification of charges filed in the first proceeding addressed five client complaints alleging lack of diligence, contrary to Rule 16–103, and failure to communicate, contrary to Rule 16–104. These allegations arose from a series of cases in which respondent undertook to represent clients but then did little or nothing to pursue their legal matters. Perhaps the most egregious of these cases involved a client who retained respondent to fight for custody of his son and visitation rights with his stepdaughter. Although the client paid respondent $1,342.00, respondent did nothing between October 1998, when he was hired, and January 2000, when the client filed his disciplinary complaint. By that time, it had been almost two years since the client had seen the children.

{3} Another example of respondent's complete failure to discharge his responsibilities to these clients was evident in another complaint filed by a client who paid respondent $150.00 to have his driver's license reinstated. Although NMRA 1978, § 66–5–5(D) provides a relatively simple procedure for license reinstatement for which the client qualified, respondent took no action on his behalf.

{4} Respondent also was charged with failing to cooperate with disciplinary counsel during the investigation of these complaints, in violation of Rule 16–803(D). Disciplinary counsel wrote multiple letters before respondent answered. In some instances, respondent wholly failed to provide information requested by disciplinary counsel despite repeated requests. The charges also alleged that respondent's conduct violated Rule 16–804(D), conduct prejudicial to the administration of justice, and Rule 16–804(H), conduct that reflects adversely on a lawyer's fitness to practice.

{5} Because respondent filed no answer to the charges, disciplinary counsel's motion to deem the allegations admitted was granted in accordance with Rules 17–309(C)(2) and 17–310(C). Respondent did attend the hearing convened to consider factors in aggravation and mitigation and the appropriate sanction. The hearing committee found as aggravating factors respondent's substantial experience in the practice of law, having been licensed since 1988, engaging in a pattern of misconduct, committing multiple rule violations, and obstructing the disciplinary process by failing to cooperate with disciplinary counsel. *See ABA Standards for Imposing Lawyer Sanctions* § 9.22 (1991 ed. as amended 1992).

{6} The hearing committee found three mitigating factors: absence of a prior disciplinary record, absence of a selfish or dishonest motive, and sincere remorse demonstrated by respondent at the hearing. *See ABA Standards for Imposing Lawyer Sanctions* § 9.23 (1991 ed. as amended 1992). A fourth mitigating factor—that respondent had experienced personal and emotional problems—was noted by the committee with the statement that it was not an excuse for his misconduct. Because the purpose of lawyer discipline is the protection of the public, personal and emotional problems will not mitigate misconduct unless a meaningful and sustained period of rehabilitation can be shown. *In re Zamora*, 2001–NMSC–011, ¶¶ 7, 13, 130 N.M. 161, 21 P.3d 30. Only with such a showing can it be considered that the lawyer's difficulties are unlikely to pose a further threat to the public. *In re Smith*, 115 N.M. 769, 771, 858 P.2d 857, 859 (1993). Because respondent made no such showing, his personal problems were not appropriate for consideration in mitigation of his misconduct.

{7} The hearing committee recommended that respondent be suspended for one year, with suspension deferred in favor of supervised probation conditioned upon respondent's compliance with his supervisor's directives on caseload management, accepting new cases, providing competent and diligent representation to his clients, and adequately communicating with them. The recommended discipline also required respondent to make full restitution to the clients mentioned above, and to pay the costs of the disciplinary proceeding prior to seeking reinstatement to full licensure. Upon recommendation by the disciplinary board, this Court entered an order imposing the recommended discipline on November 13, 2000.

{8} During the pendency of the first proceeding, the office of disciplinary counsel received another client complaint that alleged

more serious misconduct by respondent. Respondent represented a woman's ex-husband in post-decree divorce proceedings. The woman claimed her ex-husband owed her more than $9,000 awarded to her in the dissolution proceeding; the ex-husband countered by alleging that his ex-wife owed him more than he owed her, including child support for a period of time during which one or more of their children lived with him. In the first half of 2000, several district court hearings were held to address these issues. It was clear at these hearings that the woman was in need of the funds to which she was ultimately determined to be entitled.

{9} On January 28, 2000, the district court ordered respondent's client, the ex-husband, to attempt to borrow sufficient funds to pay his ex-wife $4,375.00, her attorney $3,230.17, and respondent $850.00. The ex-husband also was ordered to borrow an additional $5,000, which was to be paid into the court registry pending an evidentiary hearing to determine the portion to which his ex-wife was entitled. During a hearing on March 9, 2000, respondent stated he had received a total of $14,000.00 from his client, but had not had time to deposit it. The same day respondent wrote checks to disburse funds to the ex-wife, her attorney, and himself in accordance with the January 28, 2000, order. Respondent did not, however, deposit the $5,000.00 into the court registry.

{10} On or about June 12, 2000, the ex-wife's complaint against respondent was received in the office of disciplinary counsel. She alleged that the trust account check respondent wrote to her on March 9, 2000, to disburse the funds as ordered, did not clear the bank. In the course of investigating these allegations, disciplinary counsel learned from the district court clerk that a $5,000.00 trust account check written by respondent to the court registry was returned unpaid on June 14, 2000, due to insufficient funds.

{11} Based on these indications of problems with respondent's trust account, as well as respondent's failure to respond to the complaint, disciplinary counsel requested that the chair of the disciplinary board issue a subpoena duces tecum to respondent's bank for his trust account records. Utilizing the subpoena issued by the chair, the bank produced records for respondent's trust account for the period from March 2000, when the account was opened, through July 2000. The March 14, 2000, bank statement showed the deposit of the $14,000.00 on March 10, 2000, as well as deduction of the three court-ordered checks respondent wrote on March 9, 2000. It also showed that the balance of funds respondent continued to hold for his client was $5,544.83, which included the $5,000.00 he had been ordered to pay into court registry. The April 13, 2000, bank statement did not reflect payment of the $5,000.00 into court. Nonetheless, the trust account balance reflected on the April statement was $2,640.00. Disbursements from the account during this statement period clearly showed that respondent was converting client funds to his own use. Checks had been written to Walmart, Office Max, Southwestern Public Service, and to respondent's secretary, bearing the notation, "3–20/3–24–00."

{12} By the end of the next statement period, May 14, 2000, the trust account had a negative balance, no deposit had been made into court registry, and checks written were almost exclusively for respondent's personal expenses. A deposit of a $924.00 check tendered by his client's ex-wife for child support she owed her ex-husband was deposited into the trust account and converted by respondent. The pattern of expenditures for respondent's personal purposes and a negative balance in the trust account continued through July 2000.

{13} The July 13, 2000, statement showed a number of deposits, including a $4,998.00 wire transfer from Annie Quintana, and two $2,500.00 checks tendered to respondent for the settlement of a personal injury case involving a minor at the time of the accident. The balance at the end of the period was $945.18. Although the usual checks were issued from the trust account to pay respondent's bills, no disbursements were shown to or for the child accident victim. The $5,000.00 check respondent deposited into the court registry for his client, the ex-husband, which was returned for insufficient

funds the first time it was presented, cleared the second time on June 26, 2000.

{14} Not only did the bank records establish respondent's conversion of client funds, but other information showed the lengths to which respondent was willing to go to keep his misdeeds secret and his finances afloat. On August 3, 2000, a complaint was received from the mother of the child accident victim alleging that sometime in May 2000, respondent contacted them about settling the personal injury case and that he was very insistent about it, calling them several times in one day to complete negotiations. After they returned the executed release to him, however, they heard nothing further. The child's mother called respondent's office in June and was informed that respondent was unavailable. She then contacted the adjuster for the defendant's insurer and found out that one check had issued on June 9, 2000, and the second on June 22, 2000. The first check had been deposited in respondent's trust account on June 14, 2000, the second on June 26, 2000.

{15} On July 13, 2000, the child's mother finally reached respondent, and without telling him of her conversations with the adjuster, she inquired about the status of the settlement. Respondent told her there had been a snag in the paperwork and that he would call and check on it and then call her back, which he failed to do.

{16} Respondent also made misrepresentations in open court to hide his malfeasance. At a hearing on June 6, 2000, the district court judge asked respondent if he had received enough money from his client, the ex-husband, to deposit $5,000.00 into the court registry as previously ordered. Respondent answered that he would have to review his records to make that determination. When the district court judge attempted to clarify whether the $5,000.00 was included in the money respondent had received from his client in March, respondent answered that he did not remember. Respondent received sufficient funds from his client in March to deposit the $5,000.00 into the court registry, but he had already converted those funds. Respondent knew he had misappropriated the money for his personal use because he had written and signed the disbursement checks. Respondent again lied to the court on June 16, 2000, when the client's ex-wife, who by then was pro se, asked him during a hearing if the $5,000.00 was in his trust account. Respondent stated it was. Respondent knew this was untrue; the entire $5,000.00 had long since been converted by respondent. The deposit he finally made into the court registry came from either a loan from a relative or the settlement funds belonging to respondent's other client, the child accident victim.

{17} Respondent also failed to cooperate with disciplinary counsel during the investigation of these matters. He did not respond to the complaints of his client's ex-wife, the mother of the child accident victim, or to a third complainant.

{18} The second set of disciplinary charges was filed on or about September 5, 2000. Again, respondent failed to file an answer, resulting in the allegations being deemed admitted, and, again, respondent attended the hearing on aggravation, mitigation, and sanction.

{19} The hearing committee found that respondent's conduct violated Rule 16–804(C), conduct involving dishonesty, fraud, deceit, or misrepresentation, Rule 16–115(A), failure to safeguard client funds and failure to hold client funds separate from his own, Rule 16–115(B), failing to promptly notify a client that funds in which the client had an interest were being held in trust and failing to promptly deliver funds the client was entitled to receive, Rule 17–204(A), making cash withdrawals from trust, Rule 16–804(D), engaging in conduct prejudicial to the administration of justice, Rule 16–804(H), engaging in conduct reflecting adversely on fitness to practice law, Rule 16–303(A), knowingly making a false statement of material fact to a tribunal, Rule 16–304(A), unlawfully obstructing a party's access to evidentiary materials, Rule 16–404, using means in the representation of a client that have no substantial purpose other than to embarrass, delay, or burden a third person, and Rule 16–803(D), failing to cooperate with disciplinary counsel in the discharge of her duties.

{20} In this second disciplinary proceeding, the hearing committee found seven aggravating factors and no mitigating factors. In addition to the same aggravating factors found in the first proceeding, the committee found that respondent had committed previous disciplinary offenses, referring to this Court's November 13, 2000, order imposing discipline, the existence of a selfish and dishonest motive, and the vulnerability of the victims of respondent's misconduct. We find all of the aggravating factors appropriate for consideration in imposing discipline in this case. *See ABA Standards for Imposing Lawyer Sanctions* § 9.22 (1991 ed. as amended 1992).

{21} The hearing committee recommended disbarment and that respondent not be permitted to apply for reinstatement until he (1) made restitution to the child accident victim in the amount of $5,000.00 and to his client, the ex-husband, in the amount of $1,668.83, with interest accruing on both sums at the rate of fifteen percent per annum, (2) made restitution as ordered in the first proceeding, and (3) paid the costs of both proceedings, also with interest accruing at the rate of fifteen percent per annum. Finally, the committee recommended that if respondent is reinstated to the practice of law, he should be required to serve the one year of probation imposed in the first proceeding.

■ {22} The disciplinary board adopted the findings and conclusions of the hearing committee, except that it also found that respondent's acts were deliberate and willful. The board adopted the aggravating factors found by the committee as well as one additional factor—that respondent had refused to acknowledge the deliberate and wrongful nature of his conduct. *See ABA Standards for Imposing Lawyer Sanctions* § 9.22 (1991 ed. as amended 1992). We find this aggravating factor particularly pertinent in light of the egregious nature of respondent's conduct. The board adopted the hearing committee's recommendations for sanctions, except that the board recommended that respondent not be permitted to apply for reinstatement for five years, instead of three years as provided in Rule 17–214(A), which specifically states that a disbarred attorney may not reapply

for three years, "[unless otherwise stated in the order of disbarment....]" In this particular case, we determine that the longer period of disbarment is appropriate. Not only was respondent's conduct willful and dishonest, but from the record it is clear that the people victimized by respondent were especially vulnerable to his misconduct. To prey on the public, especially those who by circumstance, education, or experience, are least able to defend themselves, with no concern other than not having to face up to a predicament of his own making, is so reprehensible that an enhanced period of disbarment is appropriate.

{23} The need for the discipline imposed also is shown by respondent's lack of cooperation in protecting the needs of his clients after we summarily suspended him in December 2000. Disciplinary counsel filed a petition for summary suspension pursuant to Rule 17–207(A)(5), which provides for extraordinary relief upon a showing that the attorney's continued practice of law will result in a substantial probability of harm, loss, or damage and that the attorney is under investigation by disciplinary counsel, formal disciplinary charges have been filed, or a criminal complaint or indictment has been filed. The summary suspension petition, in addition to reciting that formal disciplinary charges were pending and the basis for those charges, alleged that additional complaints had been received, that the Consumer Attorney Advocate Program of the State Bar of New Mexico was receiving frequent calls from clients who were unable to contact respondent, and that the State Police were investigating respondent for possible criminal violations arising from his misappropriation of client funds. At the hearing before this Court, respondent did not dispute the trust account violations, but denied that he was not actively representing his clients or that they were unable to contact him. Persuaded that there was a substantial risk of further harm to the public, we summarily suspended respondent.

■ {24} If an attorney is summarily or otherwise suspended, or disbarred, the obligations of Rule 17–212 are activated. The rule sets forth specific procedures for notify-

ing clients, courts, and opposing counsel or parties of this Court's action. Additionally, an affidavit of compliance, attaching copies of notice letters, must be filed with the clerk of this Court within ten days of our order, with copies sent to disciplinary counsel. Not only does failure to comply risk one being found in contempt, but also may constitute a violation of Rule 16–116(D), which obligates a lawyer to protect a client's interests at the conclusion of the representation. Suspension from the practice of law involuntarily terminates the representation; it does not extinguish the lawyer's responsibility to protect client interests.

{25} When respondent failed to discharge this responsibility, disciplinary counsel filed a motion seeking the appointment of an inventorying attorney pursuant to Rule 17–213. The motion demonstrated that respondent told disciplinary counsel that he had 75 to 90 open files, that since his suspension the office of disciplinary counsel had received numerous calls from clients who were unable to reach him, that disciplinary counsel had sent several letters to respondent urging him to comply, and that several promises made by him had not been fulfilled. The motion was granted and an inventorying attorney was appointed to take possession of and inventory respondent's files and trust accounts. The order specifically directed respondent to relinquish all materials to the inventorying attorney within seven days; again, respondent failed to comply.

{26} Disciplinary counsel filed a verified motion for order to show cause, pursuant to Rule 17–212(F), and a show cause order was issued and personally served on respondent. Respondent neither filed a written response, as ordered, nor appeared at the April 4, 2001, show cause hearing. An order of contempt was issued that same day, finding respondent in direct criminal contempt and ordering the issue of a bench warrant for respondent's arrest. The contempt order provided, however, that respondent could vitiate the contempt by appearing at disciplinary counsel's office on April 11, 2001, to answer questions under oath concerning his client files and other relevant matters. The recommendation to disbar respondent was taken under

advisement by the Court at that time, with the summary suspension continuing in effect.

{27} After being personally served with the order of contempt, respondent did appear at the office of disciplinary counsel to answer questions under oath. Respondent testified that the client files he had not returned, along with his trust account records, were located in a commercial storage unit in Clovis, New Mexico. He also stated under oath that within ten days, he would accompany the inventorying attorney to the storage facility and turn over all client files and trust account records. While respondent was at disciplinary counsel's office, a call was placed to the inventorying attorney and he and respondent arranged to meet at a time and date certain to transfer the files. Consistent with his previous actions in these proceedings, respondent failed to keep the scheduled appointment. Utilizing our order appointing inventorying attorney, which authorized him to take possession of respondent's client files, the inventorying attorney retrieved some of respondent's client files from the storage facility.

{28} Should respondent apply for reinstatement in the future, Rule 17–214(E) provides that he will bear the burden of proving by clear and convincing evidence that he has the moral qualifications and is once again fit to resume the practice of law, and that the resumption of the practice of law will not be detrimental to the bar, the administration of justice, or the public. "The disbarred or suspended attorney who seeks to be reinstated bears a heavy burden and must demonstrate not only by words but also by deeds that he or she can undertake the practice of law without endangering the public or the reputation of the profession." *In re Ayala*, 112 N.M. 109, 110, 812 P.2d 358, 359 (1991). Respondent is forewarned that a reinstatement proceeding could appropriately consider not only the conduct that resulted in his disbarment, but also his recalcitrant behavior during these proceedings.

{29} Now, therefore, it is ordered that Orlando A. Quintana hereby is disbarred from the practice of law pursuant to Rule 17–206(A)(1) NMRA 2001;

{30} It is further ordered that respondent shall not apply for reinstatement for a period of no less than five years, and, should he apply for reinstatement, the procedures outlined in Rule 17–214(A) NMRA shall be followed;

{31} It is further ordered that respondent shall comply with Rule 17–212 NMRA;

{32} It is further ordered that, prior to the filing of any petition for permission to apply for reinstatement, respondent shall satisfy the following terms and conditions:

(1) Respondent shall make restitution, with interest thereon accrued at the rate of fifteen percent per annum, to the following individuals in the following amounts:

| Perry Lopez | $1,668.83; |
| Rachael Martinez | $5,000.00 |

(2) Respondent shall make restitution, with interest, as ordered in *In re Quintana*, Supreme Court No. 25,646, Disciplinary No. 06–2000–396 to the following individuals in the following amounts:

| Jose Anaya | $ 150.00; |
| Javier Garza | $1,342.00 |

(3) Respondent shall pay the costs of this action in the amount of $725.20, with interest accruing thereon at the rate of fifteen percent per annum on any unpaid balance and said costs shall be reduced to a transcript of judgment;

(4) Respondent shall pay the costs of the prior action in the amount of $381.90 with interest accruing thereon at the rate of fifteen percent per annum on any unpaid balance as of January 15, 2001, as ordered in *In re Quintana*, Supreme Court No. 26,646, Disciplinary No. 06–2000–396, and said costs shall be reduced to a transcript of judgment; and

(5) Should respondent be reinstated to the practice of law, he shall be required to successfully complete the one-year period of probation imposed in the prior disciplinary proceeding as referenced in this order in accordance with the terms of this Court's order issued on November 1, 2000.

{33} It is so ordered.