2002-NMSC-002

39 P.3d 136

**In the Matter of David G. REYNOLDS, Esquire, an Attorney Licensed to Practice Law Before the Courts of the State of New Mexico.**

**No. 27,037.**

Supreme Court of New Mexico.

Jan. 29, 2002.

472

Arne R. Leonard, Deputy Disciplinary Counsel, Albuquerque, NM, for Disciplinary Board.

Briggs F. Cheney, Albuquerque, NM, for Respondent.

OPINION

Per Curiam.

{1} This matter came before the Court upon recommendation of the disciplinary board and one of its hearing committees to accept a conditional agreement not to contest and consent to discipline tendered by respondent, David G. Reynolds, pursuant to Rule 17–211 NMRA 2001 of the Rules Governing Discipline. Under that agreement, respondent declared his intention not to contest allegations that he violated Rules 16–102(D), 16–115(A), 16–115(B), 16–804(C), and 16–804(H) NMRA 2001 of the Rules of Professional Conduct. We adopt the disciplinary board's recommendation and hereby disbar respondent.

## I.

{2} While respondent was a shareholder in an Albuquerque law firm during the year 2000, he was entrusted with the duties of preparing, reviewing, and approving the billing of firm clients for which he provided legal services. During that time period, respondent also was entrusted with the duties of collecting checks payable to an estate, depositing those checks in a special trust account established by the firm for the estate, and distributing funds from that special trust account on a quarterly basis to the beneficiaries of the estate and other persons entitled to a percentage of those funds under the terms of a court order.

{3} On or about December 20, 2000, other shareholders in the firm discovered that respondent had misappropriated several checks made payable to the firm from one of its clients. As a result, the firm was missing at least $44,069.44 in payments from the client. Shortly thereafter, the firm also discovered that respondent had misappropriated several checks that should have been deposited in the special trust account that the firm had established for the estate. As a result, at least $11,500.00 was missing from the special trust account at that time. The firm reported these discoveries in a complaint that was hand-delivered to the office of disciplinary counsel on December 28, 2000.

{4} In his initial response to the complaint, respondent acknowledged that his conduct was improper. He also indicated that he had accepted payments from other clients that were not reported to the firm. Respondent explained that he was in the process of determining the amounts owed and making restitution to the firm and the estate.

{5} Further investigation of the complaint revealed that respondent had engaged in an elaborate scheme to conceal his misappropriation of funds from others in the firm and from the firm's clients. This scheme began with respondent's decision to open a trust account in his own name without informing the firm or reporting the account on the certification regarding records and handling of trust funds that he submitted to the disciplinary board pursuant to Rule 17–204(B) NMRA 2001. Respondent began depositing checks made payable to the firm from one of its clients in his secret trust account on February 8, 2000. He began depositing checks made payable to the estate into his secret trust account on June 16, 2000. Between February 2000 and December 2000, respondent deposited a total of at least $91,487.75 in funds belonging to the firm, its clients, and third parties in his secret trust account.

{6} Respondent failed to keep these funds in trust or maintain separate ledgers for each separate trust client containing the information required by Rule 17–204(A). Rather, he converted most, if not all, of the funds to his own use by making unauthorized withdrawals from his trust account for the purpose of paying his personal expenses and debts. Several of these withdrawals were accomplished with checks made payable to cash. Respondent also transferred some of the funds to his other personal bank accounts and then withdrew the funds from those accounts.

{7} When other shareholders in the firm became aware that the firm had not received payments from one of its clients, respondent falsely reported to them that the client had not paid. He also intercepted the billing correspondence between the firm and the client. He arranged for the firm's bills to be sent to a post office box that he owned and then reissued these bills to the client on his

own letterhead with a different address. He wrote a letter to the client in which he falsely stated that, because of a change in the firm's billing system, future checks were to be made payable to him and sent to another post office box that he owned.

{8} As a result of these misrepresentations, respondent was able to obtain three additional checks from the firm's client that were made payable to him instead of the firm. The funds from these checks totaled $13,910.28. Respondent deposited two of these checks, for a total of $8,798.64, in his personal bank accounts and converted the proceeds from the two checks to his own use.

{9} Respondent concealed his misappropriation of estate funds from the firm's special trust account by attempting to replenish the account before quarterly distributions were made to the beneficiaries and others entitled to a percentage of those funds. Some of the funds that respondent used to replenish the firm's special trust account, however, were derived from the checks from one of the firm's clients that respondent had previously misappropriated. In addition, respondent failed to repay all the funds in time for the quarterly distributions. Respondent misappropriated a check in the amount of $1,032.05 on June 16, 2000, and failed to repay that amount until sometime between November 3, 2000, and November 6, 2000. At the time the firm discovered respondent's misappropriation of the estate funds in December 2000, more than $11,500.00 was missing from the firm's special trust account.

{10} After his misappropriation was discovered by others in the firm, respondent made restitution to the estate so that the quarterly distributions could be made in January 2001. He also entered into an agreement with the firm to pay restitution regarding other funds that he had misappropriated.

{11} Some of the funds that were the subject of respondent's restitution agreement with the firm were derived from payments that respondent received for legal work he performed for outside clients. According to respondent, the amount of funds he accepted from these outside clients totaled $16,173.73. Respondent failed to disclose his representation of these outside clients or the payments

he received from them until after the firm filed its complaint against him with the disciplinary board. In response to requests for information from disciplinary counsel, respondent was unable to specifically identify the date, source, and description of each payment that he deposited or to produce trust account records regarding his outside clients that contained the information required by Rule 17–204(A).

{12} On April 9, 2001, formal charges of professional misconduct were filed against respondent. Following a prehearing conference pursuant to Rule 17–312(B) NMRA 2001 that addressed a number of issues raised by respondent's counsel, respondent filed an answer in which he admitted most, but not all, of the allegations in the charges. A hearing on the merits of the charges was set for July 18 and 19, 2001. On July 13, 2001, respondent entered into a conditional agreement not to contest and consent to discipline. In conjunction with that agreement, disciplinary counsel and respondent's counsel filed a joint petition for summary suspension pursuant to Rule 17–17–207(A)(5) NMRA 2001, which this Court granted on August 1, 2001.

## II.

{13} Respondent's misappropriation of funds belonging to others and the elaborate scheme of deception he employed to conceal that misappropriation violated several provisions of the Rules of Professional Conduct. He violated Rule 16–102(D) by engaging in conduct that he knew to be criminal or fraudulent. He violated Rule 16–115(A) by failing to hold funds of clients or third persons that were in his possession in connection with a representation in a separate account and failing to keep complete records of such account funds in a manner that conforms to the requirements of Rule 17–204. He violated Rule 16–115(B) by failing to promptly notify a client or third persons of the receipt of funds in which that person has an interest and failing to promptly deliver to the client or third persons any funds that the client or third persons are entitled to receive. He violated Rule 16–

804(C) by engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. Finally, respondent's conduct adversely reflects on his fitness to practice law, thereby violating Rule 16–804(H).

{14} Disbarment is the appropriate sanction for respondent's violations of these rules. This Court has consistently imposed the sanction of disbarment when it has been shown that a lawyer knowingly misappropriated funds belonging to a client or third person. *See In re Quintana*, 2001–NMSC–021, ¶ 29, 130 N.M. 627, 29 P.3d 527; *In re Zamora*, 2001–NMSC–011, ¶¶ 12, 18, 130 N.M. 161, 21 P.3d 30; *In re Chavez*, 2000–NMSC–015, ¶ 19, 129 N.M. 35, 1 P.3d 417; *In re Hamar*, 1997–NMSC–048, ¶ 28, 123 N.M. 795, 945 P.2d 1013; *In re Krob*, 1997–NMSC–037, ¶ 6, 123 N.M. 652, 944 P.2d 881; *In re Darnell*, 1997–NMSC–025, 123 N.M. 323, 326, 940 P.2d 171, 174; *In re Rohr*, 1997–NMSC–012, 122 N.M. 774, 775, 931 P.2d 1390, 1391; *In re Schmidt*, 1996–NMSC–019, 121 N.M. 640, 642, 916 P.2d 840, 842; *In re Greenfield*, 1996–NMSC–015, 121 N.M. 633, 634, 916 P.2d 833, 834; *In re Kelly*, 1995–NMSC–039, 119 N.M. 807, 809, 896 P.2d 487, 489; *In re Evans*, 1995–NMSC–015, 119 N.M. 305, 310, 889 P.2d 1227, 1233; *In re Wilson*, 108 N.M. 378, 379, 772 P.2d 1301, 1302 (1989); *In re Duffy*, 102 N.M. 524, 525–26, 697 P.2d 943, 944–45 (1985); *In re Royall*, 34 N.M. 554, 556, 286 P. 156, 157 (1930); *In re Fleming*, 32 N.M. 442, 444, 259 P. 613, 615 (1927); *In re Barth*, 26 N.M. 93, 127, 189 P. 499, 511 (1920). We also have observed that "[o]rdinarily, when an attorney engages in intentional conduct involving dishonesty, he or she is disbarred." *In re Thompson*, 105 N.M. 257, 258, 731 P.2d 953, 954 (1987).

{15} Rule 17–214(A) NMRA 2001 provides, in relevant part, that unless otherwise stated in the order of disbarment, a disbarred person may not file a motion for permission to apply for reinstatement for a period of at least three years from the effective date of the disbarment. In most instances where this Court has disbarred an attorney, we have applied the presumptive three-year waiting period provided in this rule. *See, e.g., In re Darnell*, 1997–NMSC–025, 123 N.M. at 328, 940 P.2d at 176; *In re Hamar*, 1997–NMSC–048, ¶ 31, 123 N.M. 795, 945 P.2d 1013. In a few instances, however, we have shortened or lengthened this waiting period based on the presence of aggravating or mitigating circumstances and the relationship between the waiting period and the other conditions of reinstatement that the respondent-attorney is required to satisfy. *Compare In re Quintana*, 2001–NMSC–021, ¶ 22, 130 N.M. 627, 29 P.3d 527 (lengthening waiting period where several aggravating circumstances were present and respondent-attorney failed to cooperate with attorney appointed to inventory his files pursuant to Rule 17–213 NMRA 2001) *with In re Zamora*, 2001–NMSC–011, ¶¶ 18, 20, 130 N.M. 161, 21 P.3d 30 (shortening waiting period where several mitigating circumstances were present and disbarment was coupled with swift intervention by lawyer's assistance committee and lengthy period of supervised probation following reinstatement).

{16} In this instance, respondent has tendered an agreement to discipline by consent pursuant to Rule 17–211 under which his disbarment is to be effective on the date he was summarily suspended and he will not be eligible to move for permission to apply for reinstatement for a period of at least two years from that date. These terms of the agreement are coupled with other conditions that restrict respondent's ability to work as a law clerk or paralegal during his period of disbarment and require that he be placed under supervised probation in the event that his license to practice law is ever reinstated.

{17} We conclude that the two-year waiting period provided in the agreement tendered by respondent is appropriate when considered in conjunction with his summary suspension and the many other conditions in that agreement that respondent is required to satisfy in order to be reinstated or to work in any quasi-legal capacity. We also regard respondent's consent to be disbarred under these conditions and his decision to join in the petition for his summary suspension as clear indications that he has accepted responsibility for his misconduct and cooperated

with disciplinary authorities to a significant degree.

{18} The undisputed facts before us present no additional mitigating circumstances that are entitled to any significant weight in this case. In particular, the fact that a significant amount of the funds converted by respondent belonged to a law firm rather than a client is not a mitigating circumstance and does not make his misconduct any less serious. *See In re Ince*, 957 P.2d 1233, 1237 (Utah 1998). We have not hesitated to disbar lawyers who stole from the firms where they were employed. *See In re Duffy*, 102 N.M. at 525–26, 697 P.2d at 944–45; *In re Krob*, 1997–NMSC–037, ¶¶ 2, 8, 123 N.M. 652, 944 P.2d 881. Disbarment is an appropriate sanction under these circumstances because our legal system is harmed not only by violations of the trust that clients place in their lawyers, but also by violations of the trust that lawyers within a firm place in each other.

{19} The fact that some of the funds respondent misappropriated in this case were later repaid and that respondent made restitution after his misconduct was discovered also "does not excuse his conduct or render him inculpable." *In re Duffy*, 102 N.M. at 525, 697 P.2d at 944. "[M]isappropriation includes 'not only stealing, but also unauthorized temporary use for the lawyer's own purpose, whether or not he derives any personal gain or benefit therefrom.'" *In re Chavez*, 2000–NMSC–015, ¶ 18, 129 N.M. 35, 1 P.3d 417 (quoting *In re Wilson*, 81 N.J. 451, 409 A.2d 1153, 1155 n. 1 (1979)). This conclusion accords with Rule 16–115 of the Rules of Professional Conduct, which requires lawyers to appropriately safeguard the property of clients and third persons that is in their possession in connection with a representation. The moment a lawyer makes an unauthorized transfer of funds belonging to a client or third person from the lawyer's trust account to the lawyer's personal accounts, such funds are not appropriately safeguarded because they may be subject to the claims of the lawyer's creditors and others who may have access to the lawyer's personal accounts.

{20} In this instance, a significant portion of the payments respondent made in order to replenish the special trust account for the estate consisted of funds that he previously misappropriated from another source. He continued to misappropriate additional funds from the estate after making such payments to the special trust account. His subsequent restitution payments, made only after his misconduct was discovered and a complaint was filed against him, do not amount to mitigating circumstances. *See In re Stewart*, 104 N.M. 337, 340, 721 P.2d 405, 408 (1986) ("Restitution made only under pressure is entitled to no weight as a mitigating factor."); *In re Thompson*, 105 N.M. at 258, 731 P.2d at 954 (concluding that disbarment is appropriate sanction for intentional conduct involving dishonesty "even where restitution has been made to persons injured by the lawyer's misconduct"); *In re Wilson*, 108 N.M. at 379, 772 P.2d at 1302 ("Some of the money stolen from one client was used by Wilson to reimburse another client whose money he had previously stolen. We do not, however, find this to be a mitigating factor."); *In re Ince*, 957 P.2d at 1238 (concluding that "Ince's restitution should not be given much weight because it was made only after his misconduct had been discovered and he had been confronted by" his employer); *see generally In re Wilson* 409 A.2d at 1156–57 (listing reasons why restitution should not be given significant weight as mitigating factor in cases involving conversion of client funds).

{21} We also emphasize that neither respondent's consent to discipline under Rule 17–211 nor his consent to summary suspension under Rule 17–207 provide any basis for bypassing the procedures set forth in Rules 17–214(A), (D), (E), and (G) in the event that respondent wishes to seek reinstatement if and when he becomes eligible to do so. While it is our intention to allow respondent a reasonable opportunity for rehabilitation in this case, *see In re Zamora*, 2001–NMSC–011, ¶ 13, 130 N.M. 161, 21 P.3d 30, and a reinstatement hearing could appropriately consider the conduct that resulted in respondent's disbarment as well as his behavior in prior disciplinary proceedings, *see In re Quintana*, 2001–NMSC–021, ¶ 28, 130 N.M. 627, 29 P.3d 527, neither respondent's

prior cooperation with disciplinary authorities nor any other mitigating circumstances surrounding the misconduct that led to his disbarment are sufficient to show that he is fit to be reinstated automatically.

{22} If respondent is ever permitted to apply for reinstatement, it will be his burden to meet all the requirements of Rules 17–214(A), (D), (E), and (G) in addition to the preconditions stated in the agreement. Given the elaborate scheme of deception that led to respondent's disbarment and the lack of appropriate recordkeeping that impaired his ability to respond to disciplinary counsel's requests for additional information, the burden that respondent must meet in order to be reinstated to probationary status will be a heavy one. *See In re Ayala*, 112 N.M. 109, 110, 812 P.2d 358, 359 (1991); *cf. In re Wilson*, 409 A.2d at 1157 ("[I]t would be doubly unthinkable to permit resumption of practice by an offending attorney who remained unwilling or unable to set up proper books and records.").

{23} Finally, we neither find nor suggest that the law firm employing respondent fell short of any ethical requirements in this case. This Court has recognized that it is not always possible to protect against a lawyer's fraudulent or dishonest conduct by means of supervisory mechanisms. *See In re Chavez*, 1996–NMSC–059, 122 N.M. 504, 506, 927 P.2d 1042, 1044; *cf. In re Rawson*, 113 N.M. 758, 759, 833 P.2d 235, 236 (1992) (disbarring attorney who converted client funds by using secret trust account that was not reported on trust account certification forms filed with this Court and was not disclosed to supervising attorney or accountant). The difficulty of detecting dishonest or fraudulent conduct before harm occurs is one of the reasons why attorneys who are disbarred for this type of conduct must meet such a heavy burden before being reinstated to probationary status. This difficulty is also one of the reasons why we are reluctant to allow disbarred lawyers to work in a law firm in any quasi-legal capacity without strict supervision by disciplinary authorities. *See In re Chavez*, 2000–NMSC–015, ¶ 31, 129 N.M. 35, 1 P.3d 417.

{24} Nevertheless, this case may provide some important lessons for all law firms. In particular, lawyers who practice in a firm may wish to reexamine the division of responsibilities among firm personnel with regard to accounting, billing, other financial transactions, and the security of the firm's mail. When responsibilities for tasks such as opening and sending mail, making deposits, signing checks, maintaining trust account ledgers, reconciling bank statements, and investigating any irregularities are divided among two or more individuals, there may be less risk that one individual within the firm will be able to misappropriate funds for any significant period of time without being detected and reported by others.

## III.

{25} Now, therefore, it is ordered that the recommendation hereby is adopted and the conditional agreement not to contest and consent to discipline hereby is approved;

{26} It is further ordered that David G. Reynolds hereby is disbarred from the practice of law pursuant to Rule 17–206(A)(1) effective August 1, 2001;

{27} It is further ordered that respondent's period of disbarment shall not be deferred, in whole or in part;

{28} It is further ordered that, during the period of disbarment and summary suspension, respondent shall not obtain or continue employment as a law clerk, a paralegal, or in any other position of a quasi-legal nature except under the following conditions:

(1) Respondent shall advise disciplinary counsel within ten days of any employment, or change of employment, in any capacity with a person or firm that provides legal services;

(2) Respondent shall function as a legal assistant, legal secretary, paralegal, law clerk, employee of a lawyer, or employee of a firm that provides legal services in any capacity only under the close supervision of one or more supervising attorneys within that entity who are approved by disciplinary counsel. Such supervision shall be continuous and regular;

(3) In order to be considered for approval as a supervising attorney, the proposed supervising attorney must file a written proposal with disciplinary counsel agreeing to provide supervision and outlining the type of work being performed by respondent as well as the supervising mechanism utilized by the supervising attorney to supervise the actions of respondent;

(4) Under no circumstances shall respondent handle or have access to client funds, accounts, or other property that is subject to the requirements of Rules 16–115 and 17–204 NMRA 2001;

(5) Under no circumstances shall respondent solicit, initiate, or accept representation of a client on his own behalf or on behalf of another licensed attorney. If respondent receives any inquiries that might reasonably be interpreted as a request for legal representation, he shall inform the person making the inquiry that he is not licensed to practice law and can be of no assistance to them in obtaining legal representation;

(6) Respondent shall have no contact with his supervising attorney's clients or any clients of the supervising attorney's firm except when: (a) his supervising attorney is present; (b) his supervising attorney is in a position to directly supervise and monitor his communications with the client; or (c) the contact between respondent and the client is limited to the exchange of factual information concerning a matter for which the supervising attorney has direct responsibility *and* respondent's supervising attorney has provided the client with prior written notice that: "David G. Reynolds is not licensed to practice law and cannot provide you with any legal advice or accept any fees from you. Should you have any unanswered questions or concerns about Mr. Reynolds's communications with you, please contact me directly at [supervisor's telephone number and address]";

(7) Respondent's work area must be physically located within the same office or premises as the supervising attorney;

(8) During the course of his employment as a law clerk, a paralegal, or in any other quasi-legal capacity, respondent shall be prohibited from attending any court or administrative proceedings unless his supervising attorney is present, makes an appearance, and notifies (or has notified) the court or tribunal of respondent's status as a non-lawyer;

(9) It shall be respondent's responsibility to ensure that his supervising attorney reports to disciplinary counsel and confirms the parameters of his employment to disciplinary counsel on at least a quarterly basis;

{29} It is further ordered that at the end of his period of disbarment, respondent shall not be reinstated automatically but shall be required to apply for reinstatement to probationary status under the procedures set forth in Rules 17–214(A), (D), (E), and (G) NMRA 2001;

{30} It is further ordered that respondent shall not become eligible to file a motion for permission to apply for reinstatement to probationary status for a minimum period of at least two (2) years from August 1, 2000, the effective date of disbarment;

{31} It is further ordered that respondent shall satisfy the following terms and conditions before the filing of any application for reinstatement under Rule 17–214(A):

(1) Respondent shall observe and comply with the Rules of Professional Conduct and the Rules Governing Discipline, including the requirements for suspended or disbarred attorneys in Rule 17–212 NMRA 2001;

(2) Respondent shall keep this Court, the State Bar of New Mexico, and the Disciplinary Board apprised of his current address and telephone number and shall promptly notify the clerk of this Court, the State Bar of New Mexico, and the Disciplinary Board of any changes in his address and telephone number within twenty (20) days of any such change; and

(3) Respondent shall respond in an accurate, complete, and timely manner to all disciplinary complaints filed against him and all requests for information from the office of disciplinary counsel;

{32} It is further ordered that if respondent is reinstated at the end of his period of

disbarment upon satisfying the above conditions and terms and satisfying the additional requirements of Rules 17–214(A), (D), (E), and (G), he shall be placed on supervised probation for a minimum period of at least one (1) year pursuant to Rule 17–206(B), or for a longer period if so ordered by the Court at the time of his reinstatement, during which time he shall be required to satisfy the following conditions:

(1) Respondent's law practice shall be supervised by a supervising attorney approved by the office of disciplinary counsel;

(2) Respondent shall meet with his supervising attorney at least once per month or as often as the supervising attorney shall direct, and he shall pay the supervising attorney for his or her services at an hourly rate to be determined by an agreement between him and the supervising attorney, if such payment is required by the supervising attorney and/or the office of disciplinary counsel;

(3) Respondent shall ensure that each client and each prospective client with whom he has contact are provided with the following notice prominently displayed in writing:

> Please be advised that the law practice of David G. Reynolds is being supervised by [supervisor's name]. [Supervisor's] telephone number is _____. Should you have any unanswered questions or concerns about the handling of your legal work, please contact [supervisor's name].

(4) Respondent shall be responsible for ensuring that his supervisor advises disciplinary counsel on at least a quarterly basis as to whether he has met with his supervisor as required and is following the supervisor's instructions;

(5) Respondent shall not handle or have access to any client funds, accounts, or other property subject to the requirements of Rules 16–115 and 17–204, unless he further agrees that: (a) he shall provide disciplinary counsel and his supervising attorney with quarterly reconciliations of any trust account to which he has access reflecting the status of the account and that the account is being maintained in accordance with Rules 16–115 and 17–204; (b) his handling of client funds, accounts, or other property subject to Rules 16–115 and 17–204 shall be audited at his own expense by a certified public accountant approved by disciplinary counsel; (c) such audits shall be ordered by disciplinary counsel on a random basis at least once per calendar year during his period of supervised probation; and (d) the results of such audits shall be reported directly to the Office of Disciplinary Counsel;

{33} It is further ordered that respondent shall pay the costs of this action in the amount of $549.03, pursuant to Rule 17–106(B) NMRA 2001, on or before January 22, 2002;

{34} It is further ordered that interest shall accrue on any unpaid balance as of January 24, 2002, at the rate of fifteen percent (15%) per annum, and said costs shall be reduced to a transcript of judgment; and

{35} It is further ordered that should respondent violate any of the above terms and conditions, disciplinary counsel shall bring the violation to the attention of this Court pursuant to disciplinary counsel's duties under Rule 17–206(G), and that should he be found in contempt of this Court he may be fined, censured, suspended, disbarred for an additional period, and/or have his period of probation extended or revoked.

{36} It is so ordered.